**2013-1489**

# United States Court of Appeals
*for the*
# Federal Circuit

VIRNETX, INC., and
SCIENCE APPLICATIONS INTERNATIONAL CORPORATION

*Plaintiffs-Appellees,*

*v.*

CISCO SYSTEMS, INC.,

*Defendant*

and

APPLE, INC.,

*Defendant-Appellant*

*Appeal from the United States District Court for the Eastern District of Texas in case no. 10-CV-0417, Chief Judge Leonard Davis*

**BRIEF OF *AMICI CURIAE* NOKIA CORPORATION AND NOKIA USA INC. IN SUPPORT OF NEITHER PARTY**

Ryan W. Koppelman
Alexander Wueste
ALSTON & BIRD LLP
1950 University Circle, Fifth Fl.
East Palo Alto, CA 94303-2282
Telephone: 650-838-2000

*Attorneys for Amici Curiae Nokia Corporation and Nokia USA Inc.*

October 30, 2014

## CERTIFICATE OF INTEREST

Counsel for *amici curiae* Nokia Corporation and Nokia USA Inc. certifies the following:

**1.     The full name of every party or amicus represented by me is:**

Nokia Corporation and Nokia USA Inc.

**2.     The real name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:**

Not Applicable.

**3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:**

Nokia Corporation has no parent corporation and no publicly held company owns 10 percent or more of its stock.

Nokia USA Inc.'s parent corporation is Nokia Corporation.  Nokia Corporation owns 100 percent of the stock in Nokia USA Inc.

**4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court are:**

Alston & Bird LLP: Ryan W. Koppelman; Alexander Wueste.


Dated: October 30, 2014                 */s/ Ryan W. Koppelman_____*
                                         Ryan W. Koppelman

i

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ............................................................... i

TABLE OF CONTENTS ...................................................................... ii

TABLE OF AUTHORITIES ................................................................ iii

STATEMENT OF IDENTITY AND INTEREST OF *AMICI CURIAE* ................. 1

SOURCE OF AUTHORITY TO FILE .................................................... 2

ARGUMENT ...................................................................................... 2

    I.     INTRODUCTION ............................................................2

    II.    COMPLEX APPORTIONMENT BEYOND THE SMALLEST SALEABLE UNIT IS UNWORKABLE ............................................3

    III.   REQUIRING APPORTIONMENT CONTRADICTS THE PURPOSE OF SECTION 284 ...........................................................7

    IV.   THE PANEL OPINION CONFLICTS WITH PRIOR PANEL DECISIONS .......................................................................9

    V.    CONCLUSION ...............................................................10

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Apple Inc. v. Motorola, Inc.*,
   757 F.3d 1286 (Fed. Cir. 2014) ..................................................................6

*Garretson v. Clark*,
   111 U.S. 120 (1884) ...................................................................................7

*Laser Dynamics, Inc. v. Quanta Computer, Inc.*,
   694 F.3d 51 (Fed. Cir. 2012) .....................................................................5

*Lucent Techs., Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009) ..................................................................9

*ResQNet.com, Inc. v. Lansa, Inc.*,
   594 F.3d 860 (Fed. Cir. 2010) ...................................................................8

*Uniloc USA, Inc. v. Microsoft Corp.*,
   632 F.3d 1292 (Fed. Cir. 2011) ..................................................................9

RULES

Fed. R. App. P. 29(c)(5) ...............................................................................1

Fed. R. App. Proc. 35(a) ........................................................................2, 3, 9

OTHER AUTHORITIES

*Hearings on H.R. 5321* (later reported H.R. 5311), Hearing Before H.
   Comm. On Patents, 79th Cong. 2d Sess.  (1946) (remarks of Rep. R.
   Henry)...........................................................................................................7

*Hearings on H.R. 5321* (later reported H.R. 5311), Hearing Before H.
   Comm. On Patents, 79th Cong. 2d Sess.  (1946) (remarks of E. Tower) ...........7

H.R. Rep. No. 1587, 79th Cong., 2d Sess. 1 (Feb. 19, 1946)...................8

## STATEMENT OF IDENTITY AND INTEREST OF *AMICI CURIAE*

*Amici* are Nokia Corporation and Nokia USA Inc. ("Nokia").[1]  Nokia is a leading innovator in the telecommunications industry.  Nokia has cumulatively invested over $64 billion in research and development relating to mobile communications, and as a result of this commitment, currently owns more than 10,000 patent families.  Nokia was one of the largest manufacturers of wireless handsets for many years, and continues to invest heavily in research and development, and to license and expand its industry-leading patent portfolio.  For example, Nokia's recently formed Technologies business unit continues to develop and license innovations that are powering the next revolution in computing and mobility:  the "programmable world" where intelligent connections bring millions of everyday objects online.

Nokia has been involved in numerous patent cases in U.S. district courts, both as a plaintiff and a defendant, including cases where monetary damages in the form of a reasonable royalty were sought by or against Nokia.  Nokia is a significant patent owner that might seek monetary damages, including reasonable royalties, for certain kinds of patent infringement, for example, damages for past infringement, in U.S. district courts, and thus the appropriate legal standards

---

[1]  No counsel for any of the parties authored any portion of this brief.  No entity other than *amici curiae* Nokia Corporation and Nokia USA Inc. monetarily contributed to the preparation or submission of this brief.  *See* Fed. R. App. P. 29(c)(5).

1

governing this remedy and their application to cases involving monetary damages may be at issue.

Nokia's interest in this case is to advocate for the appropriate statement and application of legal standards governing such a reasonably royalty analysis. Companies like Nokia must be assured that their past, present, and future substantial research and development efforts are protectable under the U.S. patent regime, and that upon an appropriate request and showing they are able to be properly and adequately compensated for unauthorized uses of their patented technologies. Although Nokia does not take any ultimate position on the facts of this specific case, Nokia agrees with Appellant to the extent that Appellant argues that the Federal Circuit panel committed certain errors in its statement and application of the Court's jurisprudence relating to reasonable royalty calculations and reliable methods of determining said damages, and therefore *en banc* review and consideration should be granted in this action.

## SOURCE OF AUTHORITY TO FILE

*Amici* have attached this brief to a motion for leave of the Court to file as *amici*.

## ARGUMENT

## I.     INTRODUCTION

A request for an *en banc* rehearing under Rule 35(a) requires a showing that "(1) en banc consideration is necessary to secure or maintain uniformity of the

2

court's decisions; or (2) the proceeding involves a question of exceptional importance."  Fed. R. App. P. 35(a).  Here, *en banc* review of the Panel Opinion is needed for both reasons.  It "involves a question of exceptional importance" because it announces a rule, in the factual context of this case, which if applied broadly could depress the value of many U.S. patents, inadvertently stifle innovation and unnecessarily increase the costs associated with patent litigation.  The rule announced for this case in the Panel Opinion is unworkable and contrary the legislative history of Section 284.  In addition, the Panel Opinion conflicts with prior panel decisions and an *en banc* rehearing is needed to "secure or maintain uniformity of the court's decisions."

## II.    COMPLEX APPORTIONMENT BEYOND THE SMALLEST SALEABLE UNIT IS UNWORKABLE

The Panel Opinion, among other things, addresses certain standards to be applied, at least in the context of this case, for calculating a royalty base in a reasonable royalty calculation.  To the extent it sets new precedent, it appears to require a hypothetically further apportioned royalty base, even if the patentee is already using the smallest saleable unit associated with the patented features as the royalty base in its damages approach.  This new rule, if applied broadly, would be unworkable because it would require the patentee to generate a fictional royalty base beyond even the smallest saleable unit and to artificially assign revenue values to each of the patented and non-patented features.  Furthermore, there is no

3

evidence that this type of strained process has ever been carried out in real-world negotiations or licenses, which could present a basis to challenge use of any comparable licenses. As a result, determining a reasonable royalty under this type of approach would be fraught with uncertainty, unnecessary complexity, and additional expense, and *en banc* review is necessary.

In the real-world, a royalty base could be, *inter alia*, the unit volumes or the average selling price of a product. *See, e.g., Ericsson Inc. v. D-Link Corp.*, 2013 WL 2242444, *2 (E.D. Texas May 21, 2013) (real-world licenses using unit volumes); *Mondis Tech., Ltd. v. LG Elec., Inc.*, 2011 WL 2417367, *3 (E.D. Tex. June 14, 2011) (all 13 comparable real-world licenses used the entire value of the licensed products). A key advantage of these bases is that the values are readily ascertainable and can be easily plugged into a royalty calculation and multiplied by an appropriate royalty rate. *See Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, 2013 WL 6021712, *3 (M.D. Pa. Nov. 13, 2013) (prior licenses demonstrated the industry's acceptance of a total revenue royalty base). This real-world process sharply contrasts with the royalty calculation process initiated by the Panel Opinion, which would require first attributing hypothetical market values to the patented and unpatented features, even when none exist in the real-world. This step of further apportioning the royalty base, even when the smallest saleable unit is already being used, would unnecessarily add complexity to

4

the determination of a reasonable royalty.  It would also impose an undue burden for patent owners to prove even the minimum damages available to adequately compensate them for infringement, given that a reasonable royalty is the floor for damages under Section 284.  If this approach were to be adopted more broadly, it could depress the value of many U.S. patents, inadvertently stifle innovation and unnecessarily increase litigation-related costs, including those associated with additional discovery and expert work.

Furthermore, the new rule could be used to try to impact the evidentiary value of real-world licenses, which in Nokia's experience generally use un-apportioned royalty bases with corresponding royalty rates or per unit rates.  *See, e.g., Mondis Tech.,* 2011 WL 2417367 at *3.  Such licenses are typically among the best evidence of real world valuations of patents, and thus, when available, are critical to a reasonable royalty determination, but those licenses could become subject to other challenges (e.g., Daubert motions or motions in limine) under the Panel Opinion because, for example, they will not contain such an apportioned royalty base.  *See Laser Dynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012) ("[a]ctual licenses to the patented technology are highly probative as to what constitutes a reasonable royalty for those patent rights because such actual licenses most clearly reflect the economic value of the patented technology in the marketplace").  As a result, the Panel Opinion's approach could lead to the

5

improper and unfair limitations on the ability of patentees to establish a reasonable royalty using one of the most reliable methods currently available. *See Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286 (Fed. Cir. 2014) ("[i]t is common for parties to choose different, reliable approaches in a single case and, when they do, the relative strengths and weaknesses may be exposed at trial or attacked during cross-examination. That one approach may better account for one aspect of a royalty estimation does not make other approaches inadmissible").

Moreover, further apportioning of the smallest saleable unit as a royalty base is even less likely to reflect the value that licensees place on the patented inventions. *See id.* at 1319, fn. 4 ("[d]epending upon the case, the price a consumer would pay for an infringing feature may not, by itself, shed much light on what an infringer would pay to license that feature"). Indeed, an apportioned component cost could be significantly less than the value of that feature when incorporated into a complete multi-feature product. The Panel Opinion, if applied broadly and in an inflexible manner, could also undermine the right of patentees to prove and obtain proper compensation for infringement, and thus dis-incentivize further innovation and investment in research and development. *En banc* review is necessary to reverse this unworkable scheme to ensure it is not applied in a broader or inflexible manner.

6

## III.    REQUIRING APPORTIONMENT CONTRADICTS THE PURPOSE OF SECTION 284

The Panel Opinion would appear to extend the role of apportionment such that it would arguably apply in many more cases, and in doing so directly contradicts Congress's stated purpose in codifying the reasonable royalty remedy. The Panel Opinion relies heavily on *Garretson v. Clark*, 111 U.S. 120 (1884) to support the general proposition that a patentee may only seek damages attributable to the infringing features.  Slip Op. at 26-27.  While this general principle still holds true, *Garretson* and its lineage applied it so stringently that proving patent damages soon became unreasonably problematic.  As a result, Congress endeavored to overhaul the system of patent damages to simplify and expedite patentees' ability to recover compensation for infringement.  The Panel Opinion runs directly contrary to this legislative intent.

In debating the now-codified "reasonable royalty," Congress condemned the courts' overly-demanding apportionment requirements, noting that patents often involve relatively insignificant parts of complex structures and that it was "absolutely impossible to apportion the profits due to the invention."  *Hearings on H.R. 5321* (later reported H.R. 5311), Hearing Before H. Comm. On Patents, 79th Cong. 2d Sess.  (1946) (remarks of Rep. R. Henry); *see also id.* (remarks of E. Tower) ("[t]he great evil that has grown up around the patent system in accounting is the apportionment of damages… that comes from the devices of a complex

nature"); *see also* H.R. Rep. No. 1587, 79th Cong., 2d Sess. 1 (Feb. 19, 1946) ("Frequently a suit for patent infringement involves the infringement of only an improvement in a complex machine, and it is impossible to apportion profits due to the improvement").  H.R. 5311, which eventually became Section 284, was designed to allow courts to consider reasonable royalty evidence without first having to engage in difficult and time-consuming apportionment analyses.

The Panel Opinion seems to urge a return to the overemphasis on compelled apportionment that Congress tried to curtail in codifying Section 284.  The Panel Opinion also will undoubtedly lead to additional challenges to the relevance of real-world licenses, even if such licenses reflect the actual value that market participants place on patented features in a multi-feature device.  This new approach may actually make it harder for the "the trial court [to] carefully tie proof of damages to the claimed invention's footprint in the marketplace" by forcing speculative apportionment exercises, even when the smallest salable unit is already used as a royalty base.  *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010).   The better approach, at least when available, is to consider industry practice and actual licenses to determine the appropriate royalty base and corresponding rate.

In the legislative history to Section 284, Congress recognized that requiring apportionment for complex multicomponent devices introduced more, not less,

8

uncertainty and delay into damages analysis. Accordingly, Congress aimed to increase the courts' flexibility in determining damages by emphasizing real world reasonable royalty evidence and loosening the then-strict requirements for abstract, hypothetical apportionment. The Panel Opinion, if applied to require evidence of apportionment in most cases, contradicts Congress's intent in enacting Section 284 and should be re-evaluated *en banc* for consistency with Congress's purpose.

## IV.    THE PANEL OPINION CONFLICTS WITH PRIOR PANEL DECISIONS

The Panel Opinion also conflicts with the decision in *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009). There the Court recognized that "the base used in a running royalty calculation can always be the value of the entire commercial embodiment, as long as the magnitude of the rate is within an acceptable range (as determined by the evidence)." *Id.* at 1338-39. The Panel Opinion conflicts with this language to the extent it appears to require further apportionment of the royalty base in most cases and suggests that a reasonable royalty should not be calculated by applying an appropriate rate to a larger base. These now conflicting panel decisions require *en banc* review to ensure conformity of the law pursuant to Fed. R. App. Proc. 35(a)(1); *see also Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1319-20 (Fed. Cir. 2011) (creating further discrepancies on appropriateness of apportioning of the rate versus the base).

In *Lucent,* even though the patentee failed to show that its invention was a

9

driver of demand for the multicomponent software and thus was not permitted in that case to apply the entire market value rule, the Court noted that the defendants nonetheless would not have been prejudiced had the patentee simply applied a lower royalty rate to its royalty base to account for the non-infringing components in the multicomponent product.  580 F.3d at 1339.  The Panel Opinion contradicts this principle to the extent it suggests a prohibition on using even the smallest saleable unit as the royalty base in a "non-entire market value" context, even if the corresponding royalty rate could be appropriately discounted to account for any non-infringing components.  Such a rule would "ignore the realities of patent licensing" and remove the flexibility necessary in determining reasonable damages.  *Id.*  It would also ignore the market reality that "sophisticated parties routinely enter into license agreements that base the value of the patented inventions as a percentage of the commercial products' sales price."  *Id.*  The Lucent opinion recognized these realities in its guidance on remand, and the Panel Opinion appears to conflict with this approach.  These now conflicting panel decisions require *en banc* review to ensure conformity of the law.

### V.    CONCLUSION

For the reasons set forth above, *amici* urge this Court to reconsider the Panel Opinion *en banc*.

10

Date:  October 30, 2014          Respectfully submitted,

By: */s/ Ryan W. Koppelman*
      Ryan W. Koppelman
      Alexander Wueste
      ALSTON & BIRD LLP

      *Attorneys for Amici Curiae Nokia*
      *Corporation and Nokia USA Inc.*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(d), 32(a)(7)(B), and 35(g).  This brief, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), is 10 pages long.

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).  This brief has been prepared in a proportionally spaced typeface using Microsoft Word, in 14 Point Times New Roman.

Date:  October 30, 2014            By: _/s/ Ryan W. Koppelman_____
                                            Ryan W. Koppelman
                                            Alexander Wueste
                                            ALSTON & BIRD LLP

                                            *Attorneys for Amici Curiae Nokia*
                                            *Corporation and Nokia USA Inc.*

12

**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**
*VirnetX, Inc. et al. v. Cisco Sys. Inc. et al.*, 2013-1489

**CERTIFICATE OF SERVICE**

Undersigned counsel hereby certifies that on October 30, 2014, the

foregoing BRIEF OF *AMICI CURIAE* NOKIA CORPORATION AND NOKIA

USA INC. IN SUPPORT OF NEITHER PARTY was filed using the Court's

CM/ECF system, which will send notice of such filing to all registered CM/ECF

users.

By: */s/ Ryan W. Koppelman*
   Ryan W. Koppelman
   ALSTON & BIRD LLP

   *Attorney for Amici Curiae Nokia*
   *Corporation and Nokia USA Inc.*

# CERTIFICATE OF INTEREST

Counsel for *amici curiae* Nokia Corporation and Nokia USA Inc. certifies the following:

**1.     The full name of every party or amicus represented by me is:**

Nokia Corporation and Nokia USA Inc.

**2.     The real name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:**

Not Applicable

**3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:**

Nokia Corporation has no parent corporation and no publicly held company owns 10 percent or more of its stock.

Nokia USA Inc.'s parent corporation is Nokia Corporation.  Nokia Corporation owns 100 percent of the stock in Nokia USA Inc.

**4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court are:**

Alston & Bird LLP: Ryan W. Koppelman; Alexander J. Wueste.

Dated: October 30, 2014              */s/ Ryan W. Koppelman*
                                     Ryan W. Koppelman

# United States Court of Appeals

## for the Federal Circuit

*Virnetx, Inc., and Science Applications International Corporation*
*v.*
*Cisco Systems and Apple, Inc.*, 2013-1489

## CERTIFICATE OF SERVICE

Undersigned counsel hereby certifies that on **October 30, 2014**, the foregoing **CERTIFICATE OF INTEREST** was filed with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to all counsel registered as CM/ECF users, including any of the following:

J. Michael Jakes (Principal)
Srikala Parvathaneni Atluri
Kara F. Stoll
Direct: 202-408-4045
mike.jakes@finnegan.com
srikalaatluri@paulhastings.com
kara.stoll@finnegan.com
Fax: 202-408-4400
Finnegan, Henderson, Farabow,
Garrett & Dunner, LLP
Firm: 202-408-4000
901 New York Avenue, NW
Washington, DC 20001

Bradley Wayne Caldwell
Jason Dodd Cassady
John Austin Curry
Direct: 214-888-4848
bcaldwell@caldwellcc.com
jcassady@caldwellcc.com
acurry@caldwellcc.com
Fax: 214-888-4849
Caldwell Cassady & Curry
2101 Cedar Springs Road
Suite 1000
Dallas, TX 75201

Benjamin Schlesinger
Direct: 404-653-6416
benjamin.schlesinger@finnegan.com
Fax: 404-653-6444
Finnegan, Henderson, Farabow,
Garrett & Dunner, LLP
Firm: 404-653-6400
303 Peachtree Street, NE

3500 SunTrust Plaza
Atlanta, GA 30308

*Counsel for Plaintiff-Appellee Virnetx, Inc.*

Donald Santos Urrabazo (Principal)
Arturo Padilla
Ronald Raymond Wielkopolski, Esq.
Direct: 310-388-9099
durrabazo@ulawpc.com
apadilla@ulawpc.com
rwielkopolski@ulawpc.com
Fax: 310-388-9088
Urrabazo Law, P.C.
2029 Century Park East
Suite 1400
Los Angeles, CA 90067

Andy Tindel, Esq., Attorney
Direct: 903-596-0900
atindel@andytindel.com
Fax: 903-596-0909
Mann, Tindel & Thompson
112 East Line Street
Suite 304
Tyler, TX 75702

*Counsel for Plaintiff-Appellee*
*Science Applications International Corporation*

William F. Lee (Principal)
Mark Christopher Fleming
Lauren B. Fletcher
Direct: 617-526-6000
William.Lee@wilmerhale.com
mark.fleming@wilmerhale.com
lauren.fletcher@wilmerhale.com
Fax: 617-526-5000
Wilmer Cutler Pickering Hale and
Dorr LLP
60 State Street
Boston, MA 02109

Brittany Blueitt Amadi
Rebecca A. Bact
Jonathan Goldman Cedarbaum
Direct: 202-663-6000
brittany.amadi@wilmerhale.com
rebecca.bact@wilmerhale.com
jonathan.cedarbaum@wilmerhale.com
Fax: 202-663-6363
Wilmer Cutler Pickering Hale and
Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006

Danny L. Williams, Esq., -
Direct: 713-934-4060
danny@wmalaw.com
Fax: 713-934-7011
Williams Morgan & Amerson
10333 Richmond Avenue
Suite 1100
Houston, TX 77042

*Counsel for Defendant-Appellant*
*Apple Inc.*

October 30, 2014                                    */s/ Ryan W. Koppelman*
                                                    Ryan W. Koppelman